

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Federal Trade Commission,**<br><br>              Plaintiff,<br>    v.<br><br>**First Consumers, LLC,** a limited liability company;<br><br>**Standard American Marketing Inc.,** a corporation;<br><br>**PowerPlay Industries, LLC,** a limited liability company;<br><br>**1166519075 Québec Inc. d/b/a Landshark Holdings Inc.,** a Canadian corporation;<br><br>**1164047236 Québec Inc. d/b/a Madicom Inc.,** a Canadian corporation;<br><br>**Ari Tietolman,** individually and as an officer and director of the corporate defendants;<br><br>**Marc Ferry,** individually and as an officer and director of the corporate defendants;<br><br>**Charles W. Borie,** individually and as an officer and director of the corporate defendants; and<br><br>**Robert Barczai,** individually and as an officer and director of the corporate defendants;<br><br>              Defendants. | Civ. Action No.: 14-1608<br><br>COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF<br><br>FILED<br>MAR 18 2014<br>MICHAEL E. KUNZ, Clerk<br>By_____ Dep. Clerk |

9ouss
3/18/14

Plaintiff the Federal Trade Commission ("FTC" or "Commission") for its Complaint alleges:

1. The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-08, to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, refund of monies paid, disgorgement of ill-gotten monies, the appointment of a receiver, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), 57b, 6102(c), and 6105(b).

3. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), (b)(3), (c)(1), (c)(2), (c)(3), and (d), and 15 U.S.C. § 53(b).

## CASE SYNOPSIS

4. Using a network of front companies, Defendants target seniors for deceptive telemarketing calls. Defendants debit consumers' bank accounts without informed consent. By misrepresenting their affiliations with consumers' banks or the United States government, purporting to offer consumers legitimate products and services, and through other forms of deception, Defendants obtain consumers' bank account information and then use remotely created checks to debit consumers' accounts. Victimized consumers often learn of Defendants'

unauthorized debits only after noticing them on their bank statements. Defendants have made millions in unauthorized debits without providing any product or service in exchange.

## PLAINTIFF

5. The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces, *inter alia*, Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce, and the Telemarketing Act, 15 U.S.C. §§ 6101-08 and the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abuses telemarketing acts or practices.

6. The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the TSR, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A), 57b, 6102(c), and 6105(b).

## DEFENDANTS

7. Defendant First Consumers, LLC ("First Consumers") is a Pennsylvania limited liability company with its principal place of business listed as 222 Jefferson Ave., Downingtown, Pennsylvania. It has and continues to transact business using its own name as well at least four other names ("DBAs"): Patient Assistance Plus, Legal Eye, Fraud Watch, and Trust One Services. In connection with the matters alleged herein, First Consumers has transacted, and continues to transact, business in this district and throughout the United States.

8. Defendant Standard American Marketing Inc. ("Standard American Marketing") is a Delaware corporation with its principal place of business listed as 801 N. 59th Ave., Apt.

1078, Phoenix, Arizona. It transacts business using its own name as well at least one DBA: Trust One Services. In connection with the matters alleged herein, Standard American Marketing has transacted, and continues to transact, business in this district and throughout the United States.

9. Defendant PowerPlay Industries, LLC ("PowerPlay") is a Florida limited liability company with its principal place of business listed as 4732 West Atlantic Blvd., Ste. 302, Coconut Creek, Florida. It transacts business using its own name as well at least one DBA: Trust One Services. In connection with the matters alleged herein, PowerPlay has transacted, and continues to transact, business in this district and throughout the United States.

10. Defendant 1166519075 Québec Inc. d/b/a Landshark Holdings Inc. ("Landshark") is a Canadian corporation with its registered address at 300 - 181 boul. Hymus, Pointe-Claire (Québec) H9R5P4, Canada. In connection with the matters alleged herein, Landshark has transacted, and continues to transact, business in this district and throughout the United States.

11. Defendant 1164047236 Québec Inc. d/b/a Madicom Inc. ("Madicom") is a Canadian corporation with its registered address at 300 - 181 boul. Hymus, Pointe-Claire (Québec) H9R5P4, Canada. In connection with the matters alleged herein, Madicom has transacted, and continues to transact, business in this district and throughout the United States.

12. Defendant Ari Tietolman is a resident of Québec, Canada. He is the president and principal of Landshark and Madicom, and a co-principal of First Consumers. In connection with the matters alleged herein, acting alone or concert with others, he has formulated, directed, controlled, or participated in the acts and practices of First Consumers, Standard American Marketing, and PowerPlay (the "U.S.-based Corporate Defendants"), as well as Landshark and

Madicom (collectively, the "Corporate Defendants"), including the acts and practices set forth in this Complaint. In connection with the matters alleged herein, he has transacted, and continues to transact, business in this district and throughout the United States.

13.  Defendant Marc Ferry is a United States resident and a co-principal of First Consumers. In connection with the matters alleged herein, acting alone or in concert with others, he has formulated, directed, controlled, or participated in the acts and practices of First Consumers, including the acts and practices set forth in this Complaint. In connection with the matters alleged herein, he has transacted, and continues to transact, business in this district and throughout the United States.

14.  Defendant Charles W. Borie is a United States resident, and is the president and director of Standard American Marketing. In connection with the matters alleged herein, acting alone or in concert with others, he has formulated, directed, controlled, or participated in the acts and practices of Standard American Marketing, including the acts and practices set forth in this Complaint. In connection with the matters alleged herein, he has transacted, and continues to transact, business in this district and throughout the United States.

15.  Defendant Robert Barczai is a United States resident, and is the principal and managing member of PowerPlay. In connection with the matters alleged herein, acting alone or in concert with others, he has formulated, directed, controlled, or participated in the acts and practices of PowerPlay, including the acts and practices set forth in this Complaint. In connection with the matters alleged herein, he has transacted, and continues to transact, business in this district and throughout the United States.

## COMMERCE

16. At all times material to this Complaint, Defendants have maintained a substantial course of trade in the offering for sale and the sale of good or services via telephone, in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS PRACTICES

17. Since at least May 2011, Defendants have debited consumers' bank accounts without consumers' express informed consent, and sometimes without their knowledge. Since May 2011, Defendants have deposited more than $20 million into their accounts by illegally debiting the bank accounts of tens of thousands of consumers.

18. Defendants make deceptive telemarketing calls, targeting seniors, to obtain their personal bank account information, such as bank account and routing numbers.

19. During these calls, Defendants' representatives make several false representations. For instance, they misrepresent that they are calling on behalf of, or are affiliated with, the consumers' banks, insurance companies, or United States government entities.

20. During these calls, Defendants' representatives misrepresent that consumers have previously authorized some transaction with Defendants.

21. During these calls, Defendants' representatives ask consumers for their bank account information. In light of Defendants' misrepresentations, some consumers understand Defendants' requests for bank account information as confirmation of information that Defendants already possess.

22. During these calls, Defendants' representatives typically describe Defendants' purported products or services, and often mislead consumers about the need for those products or services. For example, they claim that consumers must sign up for, or renew, Defendants' fraud protection service immediately to preserve critical protection against an imminent threat of bank fraud. Defendants' representatives also urge consumers to sign up for other products and services important to seniors, such as medical discount benefits.

23. In numerous instances, Defendants' representatives misrepresent the costs of their products and services. For example, they have told consumers that their products and services are free, or substantially cheaper than the amount Defendants' subsequently debit from consumers' bank accounts.

24. In numerous instances, Defendants have assured consumers that Defendants will not debit the consumers' accounts, even though Defendants do precisely that.

25. Regardless of the tactics used, Defendants' pitch is structured to persuade consumers to provide their bank account information.

26. Defendants also claim to have recordings of consumers authorizing Defendants' debits. However, in numerous instances, Defendants have made false and misleading statements to induce these purported authorizations. For example, Defendants have misrepresented that products and services are free, cost substantially less than the amount Defendants ultimately debit, or that Defendants will not debit consumers' accounts until consumers' subsequent approvals. In some instances, consumers do not realize they are authorizing Defendants to debit their bank accounts.

27. In some instances, Defendants have employed authorization scripts, marching the target consumer through a series of scripted questions and instructing him or her to provide only "yes" responses, even where the consumer raises reservations or refuses to provide categorical "yes" answers.

28. In numerous instances, Defendants have debited the bank account of consumers without obtaining any authorization.

29. In numerous other instances, Defendants have debited the bank accounts of consumers with whom they have had no prior conversations.

30. Regardless of how Defendants obtain consumers' bank account information, once they have obtained it, Defendants debit consumers' accounts – typically, in amounts ranging from $100 to $400 – using remotely created checks ("RCCs") deposited into Defendants' bank accounts.

31. An RCC is a form of payment that serves the same function as a traditional check drawn on an account at a bank. Traditional checks require the signature of the authorized signatory on the checking account (the payor), which must be verified by the paying bank. By contrast, an RCC is an unsigned check that is created by the payee. In place of the payor's signature, the RCC bears a statement indicating that the account holder authorized the check, such as "Authorized by Account Holder" or "Signature Not Required."

32. As part of their operation, Defendants create the RCCs in consumers' names made out to either one of the U.S.-based Defendants or one of their various DBAs, which coincide with the names of the Defendants' purported products and services – Fraud Watch, Legal Eye, Patient Assistance Plus, and Trust One Services. Defendants then deposit the RCCs

into one of their bank accounts bearing the corresponding DBA's name. Defendants' banks then debit the consumers' bank accounts, without confirming with the consumers that they have actually authorized the transaction presented by the RCC. Accordingly, once the Defendants deposit the RCCs, the targeted consumers have no opportunity to prevent these debits before incurring them.

33. Many of Defendants' unauthorized debits are never noticed by the targeted consumers and are therefore never challenged.

34. Some consumers who notice these debits complain to, and seek refunds directly from, Defendants. When consumers complain, Defendants represent to consumers that they have authorized a transaction that led to the debit, even where the consumers have not.

35. Other consumers who notice these debits complain to their own banks. In response to such complaints, banks can reject an attempted debit or reverse a previous debit. Such a rejection or reversal is referred to as a "return."

36. The "return rate" reflects the percentage of all returns out of the total number of attempted debits. High return rates for RCCs (or other similar debits) can be indicative of unlawful practices, such as unauthorized debiting of consumer accounts.

37. Since at least May 2011, Defendants' debits of consumers' bank accounts have resulted in extremely high return rates. For example, one bank that Defendants used to deposit the debits recorded a 45.2% return rate between May 2011 and May 2013, and another bank had a 62.8% return rate between July and October 2011. These two banks have terminated their relationships with Defendants.

## COMMON ENTERPRISE

38. The Corporate Defendants operate as a common enterprise while engaging in the deceptive and unfair acts and practices alleged above. They conduct these acts and practices through an interrelated network of companies, under common control, with shared core business functions and unified advertising, while sharing DBAs, and commingling and uniting funds. Defendants use a labyrinth of shell companies, merchant accounts, and purported products and services to evade detection and perpetuate the scheme after iterative banks terminate their merchant accounts due to excessively high return rates.

39. The U.S.-based Corporate Defendants operate for Ari Tietolman's benefit. They maintain an intricate web of bank accounts through at least nine different banks, through which they routinely funnel money between each other and ultimately to Ari Tietolman's Canadian entities, primarily Landshark and Madicom.

40. Each U.S.-based Corporate Defendant currently holds at least one bank account with the DBA of Trust One Services, the name of the purported product of service upon which Defendants predicate their RCC transactions.

41. The U.S.-based Corporate Defendants rely on a common marketing scheme and unified advertising online.

## VIOLATIONS OF THE FTC ACT

42. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

43. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act. Acts or practices are unfair under

Section 5 of the FTC Act if they cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

### COUNT I – Deceptive Representations Regarding Defendants' Affiliation

44. As described above, in numerous instances, Defendants represent, directly or indirectly, expressly or by implication, that they are contacting the consumer from, or on behalf of, or are otherwise affiliated with, the consumer's bank, thrift, credit union, or other banking institution, or one or more United States government entities.

45. In truth and in fact, Defendants are not contacting the consumer from, or on behalf of, and are not otherwise affiliated with, any such bank, thrift, credit union, or other banking institution or any United States government entity.

46. Therefore, Defendants representations as set forth in Paragraph 44 of this Complaint are false and misleading and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### COUNT II – Deceptive Representations Regarding Consumer Authorization

47. As described above, in numerous instances, Defendants represent, directly or indirectly, expressly or by implication, that:

    a. consumers have previously authorized a transaction for Defendants' purported products or services;

    b. Defendants will not treat consumers' disclosure of bank account information to them as authorization for a transaction for Defendants' purported products or services; and/or

      c. Defendants will not debit money from consumers' bank accounts.

48. As described above, in truth and in fact, in numerous of these instances:

      a. consumers have not previously authorized a transaction for Defendants' purported products or services;

      b. Defendants treat consumers' disclosure of bank account information to them as authorization for a transaction for Defendants' purported products or services; and/or

      c. Defendants debit money from consumers' bank accounts.

49. Therefore, Defendants' representations set forth in Paragraph 47 of this Complaint are false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT III – Unfair Unauthorized Debits

50. As described above, in numerous instances, Defendants debit or cause the debiting of consumers' bank accounts without the consumers' authorization or express informed consent.

51. Defendants' actions cause or are likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by benefits to consumers or competition.

52. Therefore, Defendants' practices as described in Paragraph 50 of this Complaint constitute an unfair act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

53. Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices under the Telemarketing Act, 15 U.S.C. §§ 6101-6108. The FTC adopted the original TSR in 1995, extensively amended it in 2003, and amended certain sections thereafter. 16 C.F.R. Part 310.

54. Defendants are "seller[s]" or "telemarketer[s]" engaged in "telemarketing," and Defendants have initiated, or caused telemarketers to initiate, "outbound telephone call[s]" to consumers to induce the purchase of goods or services, as those terms are defined in the TSR, 16 C.F.R. § 310.2(v), (aa), (cc), and (dd).

55. Under the TSR, an "outbound telephone call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution. 16 C.F.R. § 310.2(v).

56. The TSR prohibits sellers and telemarketers from failing to disclose truthfully in a clear and conspicuous manner, before a customer pays for goods or services, among other things, all material restrictions, limitations, or conditions to purchase, receive, or use the goods or services that are the subject of the sales offer. 16 C.F.R. § 310.3(a)(l)(ii).

57. The TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, in the sale of goods or services any of the following material information:

> a. The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of a sales offer. 16 C.F.R. § 310.3(a)(2)(i);
>
> b. A seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity. 16 C.F.R. § 310.3(a)(2)(vii).

58. The TSR prohibits any seller or telemarketer from causing billing information to be submitted for payment, or collecting or attempting to collect payment for goods or services, directly or indirectly, without the customer's express verifiable authorization, except when the method of payment used is a credit card subject to the protections of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and Regulation Z, 12 C.F.R. § 226, or a debit card subject to the protections of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.*, and Regulation E, 12 C.F.R. § 205. 16 C.F.R. § 310.3(a)(3). When an audio recording of the customer's express oral authorization is used to satisfy this requirement, the TSR requires that the recording must evidence clearly the customer's authorization of payment for the goods or services that are the subject of the telemarketing transaction and the customer's receipt of all of the following information, among other information:

    a. the number of debits, charges, or payments (if more than one);

    b. the date(s) the debit(s), charge(s), or payment(s) will be submitted for payment;

    c. the amount(s) of the debit(s), charge(s), or payment(s); and

    d. a telephone number for customer inquiry that is answered during normal business hours.

16 C.F.R. § 310.3(a)(3)(ii).

59. The TSR prohibits telemarketers and sellers from causing billing information to be submitted for payment, directly or indirectly, without the express informed consent of the consumer. 16 C.F.R. § 310.4(a)(7).

60. Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### COUNT IV – Failure to Disclose Material Conditions

61. In numerous instances, in the course of telemarketing one or more of their purported products or services, Defendants fail to disclose truthfully, in a clear and conspicuous manner, before a consumer pays for the goods or services offered, material terms and conditions of the offer referred to in paragraphs 19 through 24 above.

62. Defendants' practice, as alleged in Paragraph 61, is a deceptive telemarketing practice that violates Section 310.3(a)(l)(ii) of the TSR, 16 C.F.R. § 310.3(a)(l)(ii).

### COUNT V – Misrepresenting Total Cost

63. In numerous instances, in the course of telemarketing one or more of their purported products or services, Defendants misrepresent, directly or by implication, the total cost that will be debited from the bank accounts of consumers who provide to Defendants their bank account information.

64. Defendants' practice as alleged in Paragraph 63 is a deceptive telemarketing practice that violates Section 310.3(a)(2)(i) of the TSR, 16 C.F.R. § 310.3(a)(2)(i).

### COUNT VI – Misrepresenting Affiliation

65. In numerous instances, in the course of telemarketing one or more of their purported products or services, Defendants misrepresent, directly or by implication, that they are

calling from or on behalf of, or are otherwise affiliated with the consumer's bank, trust, credit union, or other banking institution, or one or more United States government entities.

66. Defendants' practice as alleged in Paragraph 65 is a deceptive telemarketing practice that violates Section 310.3(a)(2)(vii) of the TSR, 16 C.F.R. § 310.3(a)(2)(vii).

### COUNT VII – Lack of Express Verifiable Authorization

67. In numerous instances, in the course of telemarketing one or more of their purported products or services, Defendants cause billing information to be submitted for payment using a payment method other than a credit card subject to the protections of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and Regulation Z, 12 C.F.R. § 226, or a debit card subject to the protections of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.*, and Regulation E, 12 C.F.R. § 205, without the consumer's express verifiable authorization.

68. Defendants' practice as alleged in Paragraph 67 is a deceptive telemarketing practice that violates Section 310.3(a)(3) of the TSR, 16 C.F.R. § 310.3(a)(3).

### COUNT VIII – Lack of Express Informed Consent to be Billed

69. In numerous instances, in the course of telemarketing one or more of their purported products or services, Defendants cause billing information to be submitted for payment without the express informed consent of the consumer.

70. Defendants' practice as alleged in Paragraph 69 is an abusive telemarketing act or practice that violates Section 310.4(a)(7) of the TSR, 16 C.F.R. § 310.4(a)(7).

### CONSUMER INJURY

71. Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the TSR. In addition, Defendants have been

unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

72. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

73. Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the TSR, including the rescission and reformation of contracts, and the refund of money.

## PRAYER FOR RELIEF

74. Wherefore, the Federal Trade Commission, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and the Court's own equitable powers, requests that the Court:

A. Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access, and the appointment of a

receiver;

B.  Enter a permanent injunction to prevent future violations of the FTC Act and he TSR by Defendants;

C.  Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act and the TSR, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D.  Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

JONATHAN E. NUECHTERLEIN
General Counsel

Dated: March 18, 2014

_____
DAVID R. SPIEGEL
(MD Bar – numbers not issued)
BORIS YANKILOVICH (CA Bar #257887)
ARTURO DECASTRO (DC Bar #992023)
SARAH WALDROP
(MD Bar – numbers not issued)

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

600 Pennsylvania Ave. NW
Mailstop M-8102B
Washington, DC 20580
(202) 326-3281 (Spiegel)
(415) 848-5120 (Yankilovich)
(202) 326-2747 (DeCastro)
(202) 326-3444 (Waldrop)
(202) 326-2558 (facsimile)
dspiegel@ftc.gov

byankilovich@ftc.gov
adecastro@ftc.gov
swaldrop@ftc.gov